I agree with my learned colleagues that this dispute is governed by the "unique and troublesome" agreement confected between these parties. See Vekic v. Popich , 170698, Op. at 536 (La. 10/18/17). This matter also presents in a unique posture regarding the ultimate remedy, which the majority acknowledges is guided by no precedent. Id. This agreement has defied being pigeonholed with even the parties sometimes offering different analyses. See id. at 530 n.2. Whether the agreement is a disguised credit sale,[1] a lease, or something else, it would be fair to say the agreement is sui generis .
Ultimately, the parties are bound by the agreement. The majority reverses the court of appeal, but both decisions impose a "winner-take-all" solution. However, in my view, the agreement offers a different resolution:
Lessee shall have the right to proceeds derived from such claims in an amount sufficient to reimburse Lessee for Lessee's actual loss (i.e., the cost of bedding oysters in the damaged area); proceeds in excess of such reimbursed amount shall be received by Lessor as advance Rent.
Vekic , Op. at 538. This provision indicates the Lessee (Mr. Vekic) is entitled "to proceeds derived from ... claims," but with a limitation. The limitation is "an amount sufficient to reimburse" him for "actual loss (i.e., the cost of bedding oysters in the damaged area)." Id. Any amount in excess of what the Lessee proves as "actual loss," is to be received as advance rent by the Popiches. Id. Although the lease elsewhere indicates the rent is $90,000, this provision limits Mr. Vekic to "actual damages.' Id.
The simple fact is that neither party, in confecting this agreement, considered the potential "windfall" resulting from the settlement with BP. The majority acknowledges "the agreement does not expressly provide that the excess damages would go to Mr. Vekic." Vekic , Op. at 530. I agree the parties to the agreement never considered the situation which arose-that the settlement may be in excess of the $90,000 and potentially in excess of Mr. Vekic's "actual loss." However, the agreement does, by its terms, expressly limits Mr. Vekic to "actual loss" with the "excess of such reimbursed amount" going to the Popiches. See id. at 528.
I cannot overlook the efforts of the Popiches to procure the settlement. As the majority notes, when the Popiches filed the claim, they notified the Deepwater Horizon Economic Claim Center of the 2009 Agreement with Mr. Vekic and the post-spill Act of Sale. Significantly, Mr. Vekic filed his own claim, but was denied. Instead of pursuing the claim further, he abandoned his claim and sued the Popiches. This is despite the fact a separate claim opportunity for sublessees like Mr. Vekic was created.
Respectfully, the majority automatically equates the amount of the settlement with the amount of damages Mr. Vekic sustained.
*538 However, the agreement limits Mr. Vekic's right to an amount sufficient to reimburse him for his "actual loss." See Vekic , Op. at 528. Furthermore, settlements can be, but are not necessarily, tethered to actual damages. Particularly here, the Popiches were not obligated to prove damages, but were paid a fixed amount of $2,000 per acre regardless of the amount of provable damages simply because they held a lease with the state at the time of the spill. This amount was paid despite the fact a sublessee's claim was also reserved and available to Mr. Vekic.
Parties settle for many and various reasons: because of a desire to avoid or limit protracted litigation, out of a sense of moral obligation, in an effort to build good will, or to mitigate other damages or future loss of profits.
As the majority notes, counsel for Mr. Vekic conceded there was "no actual loss. He bedded no oysters." Vekic , Op. at 534 n.10. However, there was testimony by Mr. Vekic that he spent approximately $250,000 on rock and oyster shells after the spill to provide cultch on the property so as to remediate the oyster lease. Id.
The majority properly indicates "there is little precedent to serve as a guide" in this unique matter. Id. at 536. Each side sought a windfall from BP. The Popiches succeeded in the BP claim process; Mr. Vekic did not. In effect, the majority is not only rendering a judgment, but awarding specific funds against which the judgment can be executed, which may or may not reflect the "actual loss" limitation in the contract. See Vekic , Op. at 528.
The majority properly cites La. C.C. art. 2054, which provides:
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Vekic , Op. at 536. As indicated, the majority also properly acknowledges this matter involves a "unique and troublesome form of contract confected by the parties." Id. at 536. I agree with the majority that "the BP oyster compensation plan for leaseholders was intended to settle claims for damages to waterbottoms" so as to restore the state lands to productivity. Id. I acknowledge many equities lie with Mr. Vekic because, as to this tract, he is incentivized to return the property owned by the state to oyster productivity. As to this tract, the Popiches have no incentive to make this tract productive. There is no obligation for the Popiches to remediate. However, I respectfully disagree with my colleagues in the majority that the agreement provides Mr. Vekic with a right to a portion of the BP claim sufficient to reimburse him beyond his "actual loss." See Vekic , Op. at 528. I believe Mr. Vekic's loss includes the cost to cultch or recultch the oyster beds and to bed the oysters in the damaged area and any other provable "actual loss." Id. This may or may not consume the entire amount of the BP settlement procured by the Popiches. If it does not, since the Popiches have already received the entire rental amount from Mr. Vekic, the trial judge should divide the balance of the proceeds according to "law, equity, or usage"[2] because this agreement did not provide for the settlement windfall the Popiches orchestrated for the mutual benefit of these parties.

See Vekic , Op. at 536 n.12.

La. C.C. art. 2054.