**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2019 CA 1135**

*P Mc by JEW*
*JEW*

**DINAH FONTANILLE**

**VERSUS**

**STEPHANIE REYNOLDS ROBERTSON, WIFE OF
AND BYRON TODD ROBERTSON**

**Judgment Rendered:** **MAY 2 8 2020**

* * * * * *

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana

Docket No. 2017-0000064

Hon. Robert H. Morrison, III, Judge Presiding

* * * * * *

Brenda Braud                              Counsel for Plaintiff/Appellant
Corbett L. Ourso, Jr.                     Dinah Fontanille
Hammond, Louisiana

Harvey W. Cook                            Counsel for Defendants/Appellees
Hammond, Louisiana                        Stephanie Reynolds Robertson and Byron Todd
                                          Robertson

* * * * * *

**BEFORE:  McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

Holdridge J., dissents for reasons assigned

**McCLENDON, J.**

Plaintiff/lessee seeks review of the trial court's judgment granting summary judgment in favor of the defendants/lessors, dismissing lessee's suit with prejudice, and ordering lessee to pay lessors' attorney's fees and costs. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 24, 2015, Stephanie Reynolds Robertson and Byron Todd Robertson (lessors) and Dinah Fontanille (lessee) entered into a written contract entitled "Lease with Option to Purchase – Immovable" (Lease-Option Agreement) for a residence. Pursuant to the terms of the Lease-Option Agreement, lessee would pay to lessors $900 per month for a period of two years, beginning on January 1, 2016, and ending on December 31, 2017 (lease). The Lease-Option Agreement further provided for an option to purchase, as follows:

### VII.

The **LESSOR[S]** and **LESSEE** further agree that the **LESSEE**, in consideration of the sum of $25,000.00 paid contemporaneously with the execution of this lease, shall have the right and option to purchase the aforesaid described property, including improvements under the following terms and conditions:

   a. It is understood that the $25,000.00 is the negotiated consideration for the option and shall be non-refundable in the event the **[LESSEE]** does not exercise the option to purchase at the termination of the lease.

   b. The exercise of the option to purchase shall be communicated in writing by **LESSEE** to **LESSORS** at their address set forth in this agreement on or before the 1st day of November, 2017.

   [c.] The sales price shall be $149,500.00 with **[LESSEE]** receiving credit for the option payment of $25,000.00 towards the sales price.

...

### VIII.

It is declared between the parties that if any rental [is] more than thirty (30) days in arrears or if the **LESSEE** does not perform the conditions required in this agreement then the **LESSOR[S]** shall have the option to seek cancellation of this lease and have **LESSEE** evicted. It is further agreed that there shall be a late fee in the amount of $50.00 dollars for each payment received ten days late. If the lease is terminated voluntarily or involuntarily, then the option money is forfeited.

...

2

IX.

If this lease is terminated by its term or the lease is canceled by non-performance of an obligation by the **LESSEE**, the **LESSEE** is obligated to immediately surrender possession, and should **LESSEE** fail to do so, **LESSEE** consents to pay as liquidated damages five (5) times the rent per day with attorney fees and costs.

X.

If either party is required to employ an attorney to enforce this contract, then the prevailing party shall be entitled to receive reasonable attorney fees and all court costs in conjunction with the legal proceedings.

R. 28-31. The Lease-Option Agreement was recorded in the official records of Tangipahoa Parish.

Lessee tendered, and lessors accepted, written "IOU's" in lieu of cash rent payments in May, June, and August of 2016. R. 25, 45. On August 30, 2016, Mr. Robertson and lessee executed a document entitled "Cancellation of Lease" (Cancellation), which was then recorded in the official records of Tangipahoa Parish. The Cancellation referred to the Lease-Option Agreement and stated "[s]aid [l]ease had a termination date of August 30, 2016." The Cancellation further provided:

> They further [declare] that the lease was terminated by mutual consent of the parties and they desire that the same be and is hereby cancelled and they further [direct] the Clerk of Court and Recorder of Conveyances for the Parish of Tangipahoa to make a notation of this cancellation in the margins of that certain Lease/Rental Agreement recorded at **COB 1398, page 742** of the Official Records of Tangipahoa Parish[.]

The Cancellation did not contain any language specifically addressing the option to purchase. R. 33.

On September 9, 2016, lessee notified lessors in writing that she intended to exercise the option to purchase.[1] Mr. Robertson responded and informed lessee that the property had been placed for sale with a real estate agent. Mr. Robertson further informed lessee that lessors would not credit the option money towards the purchase price of the property, unless: lessee also paid rent for May, June, and August of 2016; lease payments for September, October, and November of 2016; a real estate commission; the costs of the Cancellation; various costs lessors incurred when preparing the property for sale; and attorney's fees. R. 4-5, 13.

---

[1] Lessee also contends that she had previously given verbal notice to Mr. Robertson that she intended to exercise the option to purchase at the time the Cancellation was executed. Lessors dispute this claim.

3

Lessee filed suit naming lessors as defendants on January 9, 2017. Lessee alleged that although the Cancellation stated that the lease terminated on August 30, 2016, it "contained no provision whatsoever for cancellation of the [o]ption to purchase at termination of the lease," and therefore the Cancellation did not cancel the option to purchase. Lessee sought damages for the alleged breach of the option to purchase, specific performance of the option to purchase, and all legal fees and court costs. R. 3-6. On January 25, 2017, Lessee filed a notice of lis pendens regarding the instant suit in the official records of Tangipahoa Parish. R. 15, 34, 36. The notice of lis pendens was later cancelled on October 5, 2018. R. 35.

On March 13, 2017, lessee filed a motion for preliminary default, asserting that although lessors were properly served they had failed to file responsive pleadings within the applicable statutory delays. R. 10. On March 15, 2017, lessors answered the suit and asserted a reconventional demand. R. 12-16. Lessors asserted that the lease had been terminated at lessee's request because lessee was unable to afford the rent or the purchase price. Lessors further maintained that because the option to purchase had to be exercised prior to the termination of the lease pursuant to the terms of the Lease-Option Agreement, the option to purchase was cancelled upon cancellation of the lease. Lessors' reconventional demand sought the unpaid lease payments and late fees; the expenses lessors incurred completing repairs to the property necessitated by lessee's failure to maintain the property; and damages lessors suffered as a result of their inability to sell the property due to the Notice of Lis Pendens and the instant suit.

On September 26, 2018, lessors filed a motion for summary judgment. R. 19-26. Lessors argued that lessee's execution of the Cancellation terminated the lease and the option to purchase, and therefore lessee had forfeited the option money pursuant to the terms of the Lease-Option Agreement. Thus, lessors sought summary judgment dismissing lessee's suit, allowing lessors to retain the option money in the amount of $25,000, and awarding reasonable attorney's fees. R. 24. In support of their motion for summary judgment, lessors submitted the Lease-Option Agreement, the Cancellation, the affidavit of Mr. Robertson, and copies of the filing and cancellation of the notice of lis pendens.

On November 14, 2018, lessee filed a memorandum in opposition to lessors' motion for summary judgment. Lessee argued that the parties' differing interpretations of the Lease-Option Agreement demonstrated that the language of the Lease-Option Agreement was ambiguous, and that the ambiguities should therefore be construed against lessors as they furnished the Lease-Option Agreement. Lessee further asserted that summary judgment was precluded by questions of fact regarding the interpretation of the option to purchase, the validity of the Cancellation, the actions of the parties with respect to lessee's attempt to purchase the property, and the issue of damages. R. 38-42. Lessee submitted her affidavit in support of her opposition to lessors' motion for summary judgment.

On December 3, 2018,[2] the trial court heard lessors' motion for summary judgment. Following oral arguments, the trial court granted the motion in favor of defendants and dictated reasons to the court reporter. R. 2, 63. On May 2, 2019, the trial court executed a written judgment in conformity with its December 3, 2018 oral ruling. R. 50. From this judgment, lessee appeals. Lessee raises the following assignments of error herein:

1. The trial court erred in finding no issue of material fact existed as to lessors' right to terminate the contract.

2. The trial court erred in failing to find that the contract must be interpreted in the light most favorable to lessee.

3. The trial court erred in finding no genuine issue of material fact, thereby granting summary judgment.

## SUMMARY JUDGMENT

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Riedel v. Fenasci**, 2018-0538 (La.App. 1 Cir. 12/28/18), 269 So.3d 995, 999. In ruling on a motion for summary judgment, the

---

[2] The judgment indicates the hearing was December 3, 2017, which is undoubtedly a typographical error.

5

court's role is not to evaluate the weight of the evidence or to determine the truth of the matter but instead to determine whether there is a genuine issue of triable fact. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Foto v. Rouse's Enterprises, LLC**, 2017-1601 (La.App. 1 Cir. 8/6/18), 256 So.3d 386, 388.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).

## Assignment of Error No. 2

In her second assignment of error, lessee maintains that the Lease-Option Agreement, drafted by lessors, contained vague and ambiguous provisions that the trial court erroneously failed to construe in the light most favorable to lessee. Lessee contends that the lease and option to purchase[3] provided for in the Lease-Option Agreement were separate and distinct, such that the cancellation of the lease did not cancel the option to purchase, and she was therefore timely in her attempt to exercise the option to purchase. In support of this position, lessee contends that the Lease-Option Agreement can be reasonably interpreted to contain two separate and distinct rights, obtained through payment of two separate and distinct considerations, with separate terms: first, the right to lease, obtained by payment of $900.00 per month for the term of the lease, from January 1, 2016 through December 31, 2017; and second,

---

[3] An option is a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time and that the offeree may accept within that time. LSA-C.C. art. 1933. An option to buy is a contract whereby a party gives to another the right to accept an offer to buy a thing within a stipulated time. An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates. LSA-C.C. art. 2620.

6

the right to purchase, obtained for $25,000.00 upon the execution of the Lease-Option Agreement, valid until November 1, 2017. Lessee further asserts that "[n]owhere in the contract does it explicitly and unequivocally state that cancellation of the lease ends the time period granted to exercise the option to purchase." Thus, lessee argues that under the language of the Lease-Option Agreement as written, she reasonably believed that "for the price of $25,000, she was purchasing a right with a specific time in which to exercise that right to purchase the property, regardless [of] whether she was occupying the premises."[4]

The determination of whether a contract is clear or ambiguous is a question of law. **Sims v. Mulhearn Funeral Home, Inc.**, 2007-0054 (La. 5/22/07), 956 So.2d 583, 590. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate. **McCary v. Oceaneering Int'l, Inc.**, 2017-1163 (La.App. 1 Cir. 2/27/18), 243 So.3d 613, 616. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact inappropriate for summary judgment. **Carter v. BRMAP**, 591 So.2d 1184, 1188 (La.App. 1 Cir. 1991).

As reflected above, the Lease-Option Agreement plainly set forth the terms under which lessee would lease the property, as well as the terms under which lessee would have the option to purchase the property. In return for a payment of $25,000 made at the time the Lease-Option Agreement was executed, lessee received the right and option to purchase the property. Paragraph VII(a) of the Lease-Option Agreement specifically stated that the $25,000 option money was "non-refundable in the event

---

[4] Lessee repeatedly argues in her appellate brief that Paragraph VII(b) of the Lease-Option Agreement allows for the exercise of the option to purchase until November 1, 2017. However, this is a mischaracterization of that provision. As reflected above, the provision does not address the term of the option to purchase, but rather requires that lessors receive written communication of the exercise of the option to purchase on or before November 1, 2017.

7

[lessee] [did] not exercise the option to purchase at the termination of the lease." Paragraph VIII of the Lease-Option Agreement also explicitly provided that "[i]f the lease is terminated voluntarily or involuntarily, then the option money is forfeited." This language unambiguously requires that the exercise of the option to purchase take place at or prior to the termination of the lease, and it distinctly provides that the option money is forfeited if the lease is terminated voluntarily or involuntarily. Thus, under the plain terms of the Lease-Option Agreement, the lease and the option to purchase were inseparable, such that the termination of one necessarily terminated the other. See **Smith Enterprises, Inc. v. Borne**, 245 So.2d 9, 11 (La. App. 1 Cir. 1971), writ refused, 258 La. 574, 247 So. 2d 393 (1971) ("[T]he lease and option to purchase, being part of the same agreement, are inseparable and... so long as the lease is in full force and effect, so must be the option").

Having determined that the words of the Lease-Option Agreement are clear and explicit, we consider whether that language leads to absurd consequences. It is our conclusion that interpreting the Lease-Option Agreement in this manner does not lead to absurd consequences. To the contrary, interpreting the contract at issue in the manner proposed by lessee would lead to distinctly absurd consequences: under lessee's interpretation, lessee could terminate the lease and vacate the premises; lessors could then lease the home to a second tenant; and lessors' second tenant would be subject to eviction at any point should lessee later choose to exercise the option to purchase. This interpretation cannot stand. Thus, having thoroughly considered the entirety of the Lease-Option Agreement, and finding that the language of the contract is clear, explicit, and leads to no absurd consequences, we may make no further interpretation in search of the parties' intent. See LSA-C.C. art. 2046. This assignment of error lacks merit.

## Assignment of Error No. 1

In her first assignment of error, lessee challenges the validity of the Cancellation on several grounds, including the proper interpretation of the contract formed by the Cancellation. Lessee argues that the Cancellation itself is a confusing and misleading compromise, and therefore, the court should consider her affidavit as extrinsic evidence

of her intent and understanding when she executed the Cancellation. Lessee emphasizes that the Cancellation states that the lease is cancelled, but does not explicitly refer to or address the option to purchase.[5] On this basis, lessee again reasons that the option to purchase survived the termination of the lease pursuant to the Cancellation.

The Cancellation plainly provided that the lease was "terminated by mutual consent of the parties and they desire[d] that the same be and is hereby cancelled." This language is clear and explicit, and leads to no absurd consequences. Thus, we must strictly interpret the Cancellation as written, and cannot consider extrinsic evidence as urged by lessee. See **Peterson v. Schimek**, 98-1712 (La. 3/2/99), 729 So.2d 1024, 1031.

Though the Cancellation does not specifically address the option to purchase, it expressly refers to the Lease-Option Agreement and identifies its location in the records of Tangipahoa Parish. As a signatory of the Lease-Option Agreement, lessee is charged with knowledge of its contents.[6] The Lease-Option Agreement makes clear that voluntary termination of the lease results in the forfeiture of the option money, such that the term of the option to purchase is inseparably linked to the term of the lease, as discussed above. Thus, we find that the Cancellation unambiguously cancelled the lease, and with it, the option to purchase. We further note that this interpretation leads to no absurd consequences for the same reasons noted herein with respect to interpretation of the Lease-Option Agreement.[7] Lessee's arguments that the Cancellation is confusing and misleading lack merit.

---

[5] Lessee also points out that the Cancellation reflects a lease termination date of August 30, 2016, while the Lease-Option Agreement reflects a lease termination date of December 31, 2017, and argues that this creates confusion. We do not find that this creates any confusion. The termination date stated in the Cancellation is the same date the Cancellation was executed and recorded, and therefore is clearly intended to reflect the termination date as amended by the Cancellation.

[6] Louisiana courts have long held that a party may not avoid the provisions of a written contract he signed but failed to read or have explained to him. That is so because, "[s]ignatures to obligations are not mere ornaments." **Peironnet v. Matador Res. Co.**, 2012-2292 (La. 6/28/13), 144 So.3d 791, 811.

[7] We note lessee's reliance on Paragraph IX of the lease, which provides in part "[i]f this lease is terminated by its term or the lease is canceled by non-performance of an obligation..." Lessee argues that this indicates that the Lease-Option Agreement intended a distinction of some sort between the terms "termination" and "cancellation." However, as noted above, the Cancellation plainly states that "the lease has been terminated by mutual consent of the parties and they desire that the same be and is hereby cancelled." Thus, even if the Lease-Option Agreement did intend some distinction between the terms "termination" and "cancellation," we find that to be a distinction without a difference in light of the

9

Lessee also attacks the validity of the Cancellation by arguing that she lacked capacity to contract at the time the Cancellation was executed. Lessee relies entirely on her own affidavit to support this argument. In lessee's affidavit, she asserts that she suffers from fibromyalgia syndrome, which manifests itself in musculoskeletal pain, fatigue, and poor concentration. Lessee states that she had a pending social security disability claim based on her fibromyalgia syndrome during the time she was unable to pay her rent.[8] Lessee claims that that her diminished mental state left her vulnerable to being misled about the status of her compliance with the lease, and that lessors misled her into believing that she was in default of her lease and needed to enter into a voluntary cancellation. Lessee attests that had she known or understood her legal rights, she would not have signed the Cancellation.[9] R. 45-46.

The presumption is that all persons have the capacity to contract. **Florida v. Stokes**, 2005-2004 (La.App. 1 Cir. 9/20/06), 944 So.2d 598, 603. A contract made by a person without legal capacity is relatively null. LSA-C.C. art. 1919. A noninterdicted person, who was deprived of reason at the time of contracting, may obtain rescission of an onerous contract upon the ground of incapacity only upon showing that the other party knew or should have known that person's incapacity. LSA-C.C. art. 1925. Lack of capacity must be shown by clear and convincing evidence. **Florida**, 944 So.2d at 603.

Lessee was presumed to have capacity to contract. In order to obtain rescission of the Cancellation on the ground of incapacity, lessee would be required to not only prove her lack of capacity by clear and convincing evidence, but would also be required to prove that lessors knew or should have known of her lack of capacity. However, lessee's affidavit does not state that the lessors knew or should have known of lessee's

---

Cancellation's explicit statement that the lease was both terminated and cancelled by mutual consent of the parties.

[8] Lessee's affidavit does not explicitly state that the social security disability claim was based on her diagnosis of fibromyalgia syndrome. However, this can be reasonably inferred from the affidavit, and lessee sets forth the connection between the social security claim and diagnosis in her appellate brief. See **Willis v. Medders**, 2000-2507 (La. 12/8/00), 775 So.2d 1049, 1050.

[9] Lessee further claims that she learned that her social security disability claim, along with back due benefits, was granted the day after the execution of the cancelation. Lessee alleges that she informed lessors of her ability and desire to exercise the option to purchase on the same day, and that although she scheduled and notified lessors of the closing, lessors did not attend.

10

alleged diminished capacity. Therefore, the affidavit is insufficient to meet lessee's burden. This argument lacks merit.[10]

Lessee additionally argues that although the Lease-Option Agreement was signed by lessee and both lessors, the Cancellation was only signed by lessee and Mr. Robinson, raising a substantial question as to whether the Lease-Option Agreement was properly canceled. The concurrence of both spouses is required for the lease of community immovable property. LSA-C.C. art. 2347. An act entered into by a spouse without the concurrence of the other spouse when such concurrence is required by law is a relative nullity. LSA-C.C. art. 2353, 1979 Comment (b). However, relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative. LSA-C.C. art. 2031. Mrs. Robinson is therefore the only party who could invoke the possible relative nullity of the Cancellation. Based on the record before us, she has not done so. This argument lacks merit.

## Assignment of Error No. 3

In her third assignment of error, lessee argues that the trial court erred in finding no genuine issue of material fact existed to preclude summary judgment on the issues of damages and her attempt to exercise the option to purchase after the execution of the Cancellation. In support of this argument, lessee relies on discrepancies between her affidavit and Mr. Robertson's affidavit regarding the events that followed lessors' acceptance of lessee's "IOU's" in lieu of cash rent payments and led to the execution of the Cancellation on August 30, 2016.[11] However, under the plain terms of the Lease-Option Agreement, the option to purchase was extinguished at the same time the lease was terminated upon execution of the Cancellation on August 30, 2016. Thus, the

---

[10] We additionally note the inherent inconsistency in lessee's request that we enforce one contract she entered into — the Lease-Option Agreement — and simultaneously nullify a second contract — the Cancellation.

[11] In his affidavit, Mr. Robertson contends that lessee requested to be released from her obligations under the lease due to her inability to pay in late August of 2016. Lessee also advised lessors that she would be moving out of the property. Mr. Robertson states that he then met with lessee on August 30, 2016, at her request, and executed the Cancellation. Mr. Robertson avers that lessee "said nothing about exercising the option" prior to the execution of the Cancellation, and that he did not receive notice that lessee wished to purchase the home until September 14 or 15, 2016. R. 25-26.

disputed events following the Cancellation have no effect on the outcome of this matter. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the May 2, 2019 summary judgment that dismissed Dinah Fontanille's action with prejudice. All costs of this appeal are cast to the appellant, Dinah Fontanille.

**REVERSED AND REMANDED.**

DINAH FONTANILLE

VERSUS

STEPHANIE REYNOLDS
ROBERTSON, WIFE OF
AND BYRON TODD ROBERTSON

NO. 2019 CA 1135

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA



**HOLDRIDGE, J., dissenting.**

I respectfully dissent from the majority opinion. There are genuine issues of material fact that need to be decided at trial, not on a motion for summary judgment. Whether the option to purchase was terminated when the lease was terminated is a factual issue which is still in question. The "Cancellation of Lease" document which was filed in the official records of Tangipahoa specifically provided that the lease was "was terminated by mutual consent of the parties and they desire that the same be and is hereby cancelled." The cancellation did not contain any language which addressed the option to purchase. Therefore, a question of material fact exists as to whether or not the option to purchase was terminated when the lease was terminated. Since neither the termination document nor any other document addresses the option to purchase, extrinsic evidence may be considered to determine the intent of the parties. See **Vekic v. Popich**, 2017-0698 (La. 10/18/17), 236 So.3d 526, 529-30. Summary judgment is not appropriate when the trier of fact must determine the intent of the parties. See **Markovich v. Villere**, 2017-1739 (La. App. 1 Cir. 2/28/19), 273 So.3d 333, 340, writ denied, 2019-0500 (La. 5/20/19), 271 So.3d 201. Moreover, the lessors drafted the termination agreement and the lease, and ambiguities are construed against the drafter. See La. C.C. art. 2056. In this case, it is the lessors' failure to include any language in the lease termination document that indicated that the parties also intended to terminate the option to purchase which has created the genuine issues of material fact. Also, **Smith Enterprises, Inc. v. Borne**, 245 So.2d 9, 11 (La. App. 1 Cir. 1971), the case cited by the majority as support for its holding,

did not involve a separate cancellation of the lease or a separate deposit as consideration for the option. In **Smith**, the rent was the consideration for the option. In this case, there was a separate consideration for the option and there is a separate cancellation of the lease document. The facts of this case are clearly distinguishable. As the material fact as to whether the option to purchase was terminated is still in dispute, summary judgment is not appropriate.