HIGGINBOTHAM, J.
Plaintiff, Mr. Brad McCary, was injured on a vessel owned by defendant, Oceaneering International, Inc., during the course and scope of his employment with International Marine Systems, LLC (IMS). He received benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) from IMS and its insurer, Signal Mutual Indemnity Association, LTD (Signal). IMS and Signal (Intervenors) intervened in plaintiff's suit against the alleged third-party tortfeasor, Oceaneering, seeking subrogation for expenses and benefits paid on his behalf. In response, Mr. McCary and Oceaneering filed separate motions for summary judgment seeking dismissal of Intervenors' claims based on a Mutual Indemnity and Waiver Agreement entered into by Oceaneering and IMS. Both of their motions were granted, and Intervenors appealed.
FACTS
In March 2008, Mr. McCary was employed by IMS as an electronics technician. At that time, IMS was providing electrical services directly for Oceaneering. On March 3, 2008, in the course and scope of his employment with IMS, Mr. McCary was working on a job aboard a vessel owned and operated by Oceaneering and docked in Port Fourchon, Louisiana, when he fell while on the stairs of the vessel. After his fall, IMS's compensation insurer, Signal, paid compensation and medical benefits to Mr. McCary on behalf of IMS under the LHWCA.
On March 3, 2009, Mr. McCary filed suit against Oceaneering, alleging negligence on the part of Oceaneering and seeking damages for injuries he sustained as a result of the fall. On October 4, 2011, Intervenors filed a petition for intervention in Mr. McCary's suit seeking to recover the compensation and medical benefits that Intervenors paid to Mr. McCary, if there should be any recovery of damages by Mr. McCary from Oceaneering.
After numerous motions, discovery requests, and a change of counsel, on January 18, 2017, Mr. McCary filed a motion for summary judgment seeking dismissal of Intervenors' claims based on a "Mutual Indemnity and Waiver Agreement" between IMS and Oceaneering executed on September 27, 2006, in which Mr. McCary contends that IMS contractually agreed to waive all claims of subrogation and/or reimbursement (the agreement). On February 3, 2017, Oceaneering also filed a motion for summary judgment seeking dismissal of Intervenors' claims for the reasons laid out in Mr. McCary's motion. Intervenors opposed both motions contending *615 that the agreement did not apply to this case. Specifically, Intervenors argued that under paragraph (a), the agreement only applies in situations when both IMS and Oceaneering are working for some common third party but not, as in this case, when IMS was doing work directly for Oceaneering.
The matter came before the trial court for hearing on May 3, 2017, at which time, the trial court found that under the clear language of the contract, "IMS and Oceaneering intended to modify their relationship and enter into this ... agreement to avoid disputes as to their respective property and employees." Thereafter, on May 23, 2017, the trial court signed a judgment granting both Mr. McCary and Oceaneering's motions for summary judgment and dismissing the claims of Intervenors. It is from this judgment that Intervenors appeal, contending that the trial court erred in its interpretation of the scope of the agreement.
LAW AND ANALYSIS
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966(A)(2).
The burden of proof is on the mover. La. Code Civ. P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. Succession of Hickman v. State Through Bd. of Supervisors of Louisiana State Univ. Agricultural and Mechanical College, 2016-1069 (La. App. 1st Cir. 4/12/17), 217 So.3d 1240, 1244.[1]
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Reynolds v. Bordelon, 2014-2371 (La. 6/30/15), 172 So.3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Succession of Hickman, 217 So.3d at 1244. In this case, the substantive law is based on interpretation of a contract.
*616 The determination of whether a contract is clear or ambiguous is a question of law. Sims v. Mulhearn Funeral Home, Inc., 2007-0054 (La. 5/22/07), 956 So.2d 583, 590. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims, 956 So.2d at 590 ; see also Claitor v. Brooks, 2013-0178 (La. App. 1st Cir. 12/27/13), 137 So.3d 638, 644-645, writ denied, 2014-0198 (La. 4/4/14), 135 So.3d 1182. The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. McKinney v. South Central Bell Telephone Company, 590 So.2d 1220, 1222 (La. App. 1st Cir. 1991), writ denied, 592 So.2d 1302 (La. 1992), citing Liem v. Austin Power, Inc., 569 So.2d 601, 608 (La. App. 2d Cir. 1990).
The following general codal principles guide our interpretation of the contract, including its indemnity provisions. Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. This is an objective inquiry; thus, "a party's declaration of will becomes an integral part of his will." La. Civ. Code art. 2045, 1984 Official Revision Comment (b). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. The words of a contract must be given their generally prevailing meaning. La. Civ. Code art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. Civ. Code art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050.
The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement. Nassif v. Sunrise Homes, Inc., 98-3193 (La. 6/29/99), 739 So.2d 183, 185. Here, the indemnity obligation is expressed in a contract between the parties. As such, the contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions. See Naquin v. Louisiana Power & Light Company, 2005-2103 (La. App. 1st Cir. 9/15/06), 943 So.2d 1156, 1161, writ denied, 2006-2476 (La. 12/15/06), 945 So.2d 691.
In this matter, the sole issue is whether the agreement entered into by IMS and Oceaneering in 2006 applies when IMS is providing services directly to Oceaneering. IMS takes the position that the language of the "whereas clause" in paragraph (a) in the agreement limits the agreement to circumstances where Oceaneering and IMS were providing equipment or personnel pursuant to agreements with third parties, and there is no language in the agreement expressing any intent of the parties to have the contract apply to other situations, including instances where IMS was hired to perform work directly for Oceaneering.
The introductory paragraphs provide the language that is in dispute and state:
This Mutual Indemnity and Waiver Agreement ("Agreement"), made as of this 27 day of September, 2006, between [IMS] a corporation with offices located at 2845 Hwy 311, Schriever, LA 70395 ... and [Oceaneering] a Delaware corporation with offices located at 1191 FM 529, Houston, Texas 77041..., witnesseth:
Whereas, *617 a) [IMS] and [Oceaneering] have each entered into an agreement(s) (each a "Contract") with one or more third parties regarding the supply or performance of work, services, equipment and/or vessels associated with or incident to offshore operations utilizing the [IMS]'s and [Oceaneering]'s equipment and/or personnel (the "Operations"); and
b) The parties wish to modify their relationship at law and avoid entirely disputes as to their liabilities for damage or injuries to their respective property or employees by providing for a mutual indemnity regime between the parties with respect to their respective personnel and property;
In favor of their motions for summary judgment, Mr. McCary and Oceaneering rely on the language of the agreement and include additional evidence primarily to point out that at the time the agreement was entered into, IMS was hired to perform work directly for Oceaneering, which was the impetus for the agreement, and there was no evidence that IMS and Oceaneering at that time or on any occasion worked for any mutual third party. Mr. McCary attached Oceaneering's responses to interrogatories, which noted that in September 2006, Oceaneering hired IMS to perform certain upgrade work on one of its vessels. Oceaneering also attached an email chain, in which on September 1, 2006, Oceaneering sent a copy of the agreement and stated in an email: "[Oceaneering] requires all vendors who perform work or services on any of our vessels to sign the attached [agreement]." Oceaneering also attached the deposition of Wes Hill, a service manager for IMS, who acknowledged that all the work he was involved with which included Oceaneering would have been in situations where Oceaneering was hiring IMS to perform some type of services for them on their vessel.
The language of paragraphs (a) and (b) of the agreement does not limit the application of the contract to situations where Oceaneering and IMS were providing equipment or personnel pursuant to agreements with third parties. The clauses of a contract which begin with the word 'whereas' simply state the reasons for the confection and the mental intent of the parties. Succession of Ramp, 252 La. 660, 671, 212 So.2d 419, 423 (La. 1968). Keeping with the codal rules, we are unable to end our inquiry by mere examination of the contract's "introductory" provision. The contract must be read as a whole giving meaning to each passage. See U.S. Environmental Services, L.L.C. v. Nelson, 2010-1817, 2011 WL 3759922, *6 (La. App. 1st Cir. 8/25/11) (unpublished). See also La. Civ. Code art. 2050, which provides: "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
In the agreement, the clause after the introductory paragraph provides: "therefore, in consideration of the premises and reciprocal covenants contained herein, the receipt and sufficiency of which parties acknowledge the parties agree as follows:" in the following clauses, the parties unequivocally mutually agree to indemnify each other for any cause of action associated with the performance of work associated with or incident to offshore operations utilizing Oceaneering and IMS's equipment and or personnel. The relevant language provides "[IMS] shall be liable for, waives all right of recourse against [Oceaneering] with respect to, and shall release, indemnify and hold harmless [Oceaneering] from and against, any and all claims, demands or causes of action of every kind and character brought by any *618 person or party, for injury to ...any member of [IMS] ...which injury arises out of or is incident to the Operations."
After review of the agreement, we find it can be construed from the four comers of the instrument without looking to extrinsic evidence; thus the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. We find no ambiguity that the agreement clearly governs situations where IMS was performing work directly for Oceaneering, including the work being performed by Mr. McCary when the incident occurred. Therefore, we affirm the decision of the trial court.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgments in favor of Mr. McCary and Oceaneering and dismissing the claims of IMS and Signal is affirmed. All costs of this proceeding are assessed to International Marine Systems, LLC, and Signal Mutual Indemnity Association, LTD.
AFFIRMED.

Louisiana Code of Civil Procedure art. 966, regarding summary judgment, was amended and reenacted by La. Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The legal standard to be used by the courts in granting a motion for summary judgment remains unchanged by the recent legislative amendments to Article 966. See La. Code Civ. P. art. 966, 2015 cmt. (b).