# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2023 CA 1204

### SRG BATON ROUGE II, L.L.C.

### VERSUS

### PATTEN/JENKINS BR POPEYE'S, L.L.C.

*Judgment Rendered:*   MAY 3 1 2024

\*\*\*\*\*\*\*\*

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C679391

The Honorable Trudy M. White, Judge Presiding

\*\*\*\*\*\*\*\*

| | |
|---|---|
| Jimmy R. Faircloth, Jr.<br>Mary Katherine Price<br>Alexandria, Louisiana | Counsel for Plaintiff/Appellee<br>SRG Baton Rouge II, L.L.C. |
| Antonio M. "Tony" Clayton<br>Port Allen, Louisiana | |
| Geoffrey D. Westmoreland<br>Anna W. O'Neal<br>Caroline D. Alford<br>Shreveport, Louisiana | Counsel for Defendant/Appellant<br>Patten/Jenkins BR Popeye's, L.L.C. |
| Timothy W. Hardy<br>Baton Rouge, Louisiana | |
| Druitt G. Gremillion, Jr.<br>Baton Rouge, Louisiana | |

\*\*\*\*\*\*\*\*

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**LANIER, J.**

In this declaratory action seeking performance, reformation, and damages relative to the enforceability of a commercial lease and the option to purchase provision contained therein, defendant, Patten/Jenkins BR Popeye's, L.L.C. ("Patten/Jenkins"), appeals the trial court's judgment awarding damages to plaintiff, SRG Baton Rouge II, L.L.C. ("SRG"), in addition to several interlocutory judgments, including a judgment granting a motion for protective order and to quash a subpoena duces tecum filed by SRG; a judgment denying Patten/Jenkins' exception raising the objection of no right of action; and a judgment granting SRG's motion in *limine* to exclude testimony by Jenkins' expert witness. SRG answered the appeal, seeking a modification of damages.

In a companion appeal also decided this date, Patten/Jenkins challenged the trial court's judgment granting partial summary judgment in favor of SRG. See **SRG Baton Rouge II, L.L.C. v. Patten/Jenkins BR Popeye's, L.L.C.**, 2023 CA 1203 (La. App. 1 Cir. --/--/--) (unpublished opinion) ("**SRG I**").[1] We dismissed the appeal in **SRG I**, finding that the partial summary judgment was not a final, appealable judgment, opting instead to fully address, in this appeal, the issue of whether summary judgment was appropriately granted. For the reasons set forth below, we reverse the partial summary judgment; vacate the merits judgment, as well the interlocutory judgments entered by the trial court prior to the trial on the merits; dismiss the answer to the appeal as moot; and remand for further proceedings in accordance herewith.

---

[1] As discussed in **SRG I**, SRG moved to consolidate the two appeals, arguing the two appeals "should proceed in one streamlined proceeding." SRG added it had "no objection to Patten/Jenkins raising its grievances with the summary judgment ruling on appeal along with the final judgment awarding SRG damages." Patten/Jenkins agreed with consolidation of the appeals for purposes of consideration by the same panel, but opposed consolidation for the purposes of briefing. This court granted the motion, ordering that **SRG I** be consolidated with this appeal for argument and submission.

2

## FACTS AND PROCEDURAL HISTORY

Patten/Jenkins owns a parcel of land in East Baton Rouge Parish. Patten/Jenkins' predecessor in interest leased the property to SRG's predecessor in interest, and by assignment and assumption, SRG purportedly assumed all obligations under the terms of the lease.

The lease set forth a 20-year term that began on March 8, 1999, and expired on March 8, 2019. As set forth in Section 28 of the lease, "Option to Extend," the lessee had the option to continue the lease "for up to two additional successive periods of five years each in accordance with the terms and provisions of the Lease then in effect." However, it is undisputed that SRG never exercised its option to extend the lease within the stipulated extension window. On December 13, 2018, SRG notified Patten/Jenkins of its intent to purchase the property in accordance with Section 23 of the lease, "Option To Purchase Premises." Section 23 provided for a "Window" within which the lessee could exercise the option to purchase. Said "Window" was set forth as "the 90 days immediately preceding the tenth and twentieth anniversaries" of the lease.[2]

In letters dated January 16, 2019, and March 7, 2019, Patten/Jenkins informed SRG it needed to vacate the property by March 8, 2019. Patten/Jenkins indicated that "holding over" past the termination date of the lease would not be permitted, referring SRG to Section 30 of the lease.[3]

---

[2] The "Window" also included "the 90-day period immediately preceding the end of the first and second optional extension terms set forth in Section 28." However, as previously noted, SRG never exercised its right to extend the lease.

[3] As set forth in Section 30, "holding over" after the expiration of the lease term was at lessor's option and within lessor's sole discretion and would result in lessee being deemed "a tenant on a month-to-month basis." Section 30 further provided that "the Base Monthly Rental shall be automatically doubled" and that "Lessee shall defend, indemnify, protect and hold Lessor harmless from and against any and all claims, losses and liabilities for damages resulting from Lessee's failure to surrender possession upon expiration of the Lease Term."

SRG never vacated the property. Rather, on February 7, 2019, SRG filed suit against Patten/Jenkins seeking declaratory judgment and specific performance, including but not limited to: the recognition of SRG's option to purchase the leased premises; enforcement of SRG's option to purchase and the enforcement of Patten/Jenkins' obligation associated with the option to purchase; and the recognition and enforcement of SRG's continued occupancy of the leased premises during the option to purchase process. SRG further sought reformation of the lease should the trial court be unable to interpret the lease to allow for its continuation of occupancy during the option to purchase process and damages against Patten/Jenkins for its bad faith.

On March 13, 2019, Patten/Jenkins notified SRG that it was "knowingly trespassing" on the property as it did not have permission to hold over past the end of the lease, March 8, 2019. Patten/Jenkins further indicated its intention to appoint Tom W. Cook, MAI of Cook Moore Davenport & Associates, to appraise the property. Patten/Jenkins filed an answer and reconventional demand, alleging that SRG "continue[d] to occupy the property ... despite notice that [Patten/Jenkins] would not allow holding over under the expired lease." On April 4, 2019, Mr. Cook issued an appraisal, valuing the property at $850,000.00.

In August 2019, SRG filed a motion for partial summary judgment, seeking a judgment on the merits of its breach of contract claims regarding the option and its specific performance demand of that provision.[4] In support of its motion, SRG attached the affidavit of Michael A. Shelton, the manager of SRG, along with numerous other exhibits, including a copy of the lease; a copy of the assignment; a copy of Mr. Cook's appraisal report; and various letters and emails between the parties. The trial court set the matter for hearing on October 16, 2019.

---

[4] SRG argued that it timely and validly exercised the option to purchase and that Patten/Jenkins' intentional delays could not prevent the execution of the option.

4

Patten/Jenkins moved for a continuance, arguing that discovery needed to be completed before it could adequately respond to SRG's motion. The matter was argued before the trial court on September 30, 2019, at which time the trial granted the motion, continuing the hearing on SRG's motion for partial summary judgment until further orders of the court. In granting the continuance, the trial court noted as follows:

> [Patten/Jenkins'] motion for continuance is granted. Court is of the opinion that [SRG's] motion for summary judgment is, in fact, premature as there ... has not been sufficient time to conduct discovery.
> There are questions of genuine issue of material fact to the appraisal, the bad faith, and the lease assignment ... which [Patten/Jenkins] needs time to discover what it means to be able to oppose any motion for summary judgment.

The trial court signed a judgment on October 12, 2019, granting the continuance.

On September 26, 2019, even before the hearing on Patten/Jenkins motion to continue the hearing on SRG's motion for partial summary judgment, SRG filed a "Motion For Protective Order And To Quash Subpoena Duces Tecum," requesting a protective order prohibiting Patten/Jenkins' request for production of documents numbers 1-6 and 8 and prohibiting the depositions of Mr. Shelton; Mr. Cook; Pam Racheal; Patty Broom; and the La. Code Civ. P. art. 1442 deposition of Compass Bank. SRG argued the discovery was not reasonably calculated to lead to admissible evidence and would only serve to harass SRG and further delay the purchase process.

Patten/Jenkins opposed this motion, arguing that the information sought in the discovery was wholly relevant to the dispute as SRG seeks to purchase the property for the "fair market value" as set forth in Mr. Cook's appraisal. Patten/Jenkins alleged that the "discovery sought seeks to determine if any improper actions or information were provided" regarding the appraisal.

Following a hearing on the motion, the trial court signed a judgment on November 30, 2019, granting the relief sought by SRG regarding the discovery.

Patten/Jenkins opposed SRG's motion for partial summary judgment, arguing that genuine issues of fact remained that precluded summary judgment in favor of SRG. Initially, Patten/Jenkins alleged that a finding of bad faith was required in order to find that Patten/Jenkins purposefully delayed appointing an appraiser and delayed closing in this case, noting that the subjective finding of bad faith can only be made by the trier of fact after hearing testimony and weighing evidence. Patten/Jenkins further asserted there are unresolved issues of fact bearing on the propriety of the appraisal issued on the property. Finally, Patten/Jenkins maintained that SRG's rights under the lease itself, including the right to exercise the option to purchase the property, remain contested and "must be addressed as a condition precedent to the [trial court's] consideration of SRG's substantive claims against Patten/Jenkins on summary judgment or otherwise."

After hearing arguments on the partial motion for summary judgment, the trial court granted partial summary judgment in favor of SRG. The trial court ordered Patten/Jenkins to take the necessary steps to perfect the sale of the property in accordance with the clear and explicit terms of the option to purchase.[5]

Patten/Jenkins subsequently filed an exception raising the objection of no right of action and motion to vacate the partial summary judgment, arguing that SRG had not shown with adequate documentary evidence that it was a party to the contract it sought to enforce. Patten/Jenkins maintained that without contractual privity to the lease in question, SRG had no standing or right to assert claims for

---

[5] The original judgment granting SRG's motion for partial summary judgment was signed by the trial court on September 1, 2020. Patten/Jenkins' subsequent appeal of this judgment was dismissed based upon noted deficiencies in the judgment. However, in dismissing the appeal, this court recognized Patten/Jenkins' right to "seek appellate review once a judgment correcting the foregoing deficiencies has been obtained or once a final judgment has been entered." See **SRG Baton Rouge II, L.L.C. v. Patten/Jenkins BR Popeye's, L.L.C.**, 2021-0081 (La. App. 1 Cir. 4/26/21) (unpublished action).

breach of contract. The trial court denied the exception. Thereafter, SRG filed a motion in *limine*, seeking to exclude the testimony of Patten/Jenkins' untimely named expert witness, which was granted by the trial court.

The matter proceeded to a one-day bench trial, at the conclusion of which the trial court asked the parties to submit written reasons of fact and law and proposed judgments for the court's review. On November 3, 2022, the trial court signed SRG's proposed written reasons for judgment, which contained a finding of bad faith by Patten/Jenkins and a judgment awarding $111,472.74 in damages to SRG. SRG filed a motion for new trial, seeking to align the damages awarded in the judgment with the damages contemplated in the written reasons for judgment.[6] After hearing argument on the motion for new trial, the trial court awarded an additional $136,244.45 to SRG in loss of rental income. The trial court signed a judgment on December 12, 2022, awarding SRG $247,717.19 in damages, plus attorney fees and costs.[7] This appeal by Patten/Jenkins followed.

## SUMMARY JUDGMENT

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." La. Code Civ. P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. **Short v. RaceTrac Petroleum, Inc.,** 2022-0859 (La. App. 1 Cir. 2/24/23), 361 So.3d 1051, 1058, writ denied, 2023-00535 (La. 6/7/23), 361 So.3d 973.

---

[6] The written reasons for judgment included $417,459.30 in damages, representing $111,472.74 in rent paid by SRG to Patten/Jenkins and $305,986.56 in loss of rental income.

[7] The trial court actually signed three different judgments following the hearing on the motion for new trial, including the December 12, 2022 judgment. Following a hearing with the parties, the court determined that the December 12, 2022 judgment was the judgment of the court and set aside as void the other two judgments that had been signed on December 13, 2022, and December 15, 2022.

7

The initial burden of proof is on the mover. If the mover will not bear the burden of proof at trial, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition that proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40 (per curiam); **Jenkins v. Hernandez**, 2019-0874 (La. App. 1 Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. **Chevis v. Rivera**, 2021-0124 (La. App. 1 Cir. 9/24/21), 329 So.3d 831, 838, writ denied, 2021-01546 (La. 12/21/21), 330 So.3d 317. The court may, however, grant summary judgment based on an intent issue when there is no genuine issue of material fact concerning the pertinent intent. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1 Cir. 7/18/18), 255 So.3d 16, 24, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. Nevertheless, the law is well settled that the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. **Pumphrey v. Harris**, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 91. Because it is the applicable substantive law that determines materiality, whether a particular fact in

dispute is material can be seen only in light of the substantive law applicable to the case. **Short**, 361 So.3d at 1059.

## LAW AND ANALYSIS

The section of the lease that is in dispute in this case is Section 23 concerning the "Option To Purchase Premises." The parties point to two conflicting provisions in Section 23 regarding the closing deadlines. Section 23 provides, in pertinent part, as follows:

> 23. *Option To Purchase Premises.* Lessee shall have the option during the 90 days immediately preceding the tenth and twentieth anniversaries of this Lease and during the 90-day period immediately preceding the end of the first and second optional extension terms set forth in Section 28 of this Lease (as applicable, the "Window"), to give Lessor notice (the "Option Notice") of Lessee's election to purchase the Premises for the greater of (i) its fair market value (which fair market value shall be determined in the manner set forth below) or (ii) the Minimum, Purchase Price. **The closing of such purchase must occur during the first 90 days (the "Purchase Period") following the end of the applicable Window.** Within 90 days of Lessor's receipt of the Option Notice, Lessor shall, at Lessee's sole expense, retain an independent MAI appraiser to prepare an appraisal of the fair market value of the Premises including any additions or renovations thereto. ...
>
> Upon exercise of this option, Lessor and Lessee shall open an escrow account with a recognized title insurance or trust company selected by Lessor. Such escrow shall be subject to the standard escrow instructions of the escrow agent, to the extent they are not inconsistent herewith. At or before the close of escrow, Lessor shall deliver to the escrow agent its special warranty deed conveying to Lessee all of Lessor's right, title and interest in the Premises free and clear of all liens and encumbrances except liens for taxes and assessments and easements, covenants and restrictions of record which were attached to the Premises as of the date hereof, attached during the Lease Term through Lessee's action or inaction, as the case may be, have been granted by Lessor in lieu of a taking by the power of eminent domain or the like, have been approved by Lessee, or which do not materially adversely affect the use of the Premises as a restaurant. In the event Lessor is unable to convey title as required, Lessee shall have the right to accept such title as Lessor can convey or elect not to consummate its exercise of the option, in which case the option for such time period shall lapse and this Lease shall remain in full force and effect. Both Lessor and Lessee agree to execute a purchase agreement, escrow instructions and such other instruments as may be necessary or appropriate to consummate the sale of the Premises in the manner herein provided. All cost of exercise of the option, including, but not limited to, escrow fees, title insurance fees,

9

recording costs or fees, attorneys' fees (including those of Lessor), appraisal fees, stamp taxes and transfer fees shall be borne by Lessee. **Lessee shall continue to pay and perform all of its obligations under this Lease until the close of escrow which in no event shall occur after the date of the expiration of the Lease Term or the expiration of any extension thereof.** The purchase price paid by Lessee in exercising this option shall be paid to Lessor or to such person or entity as Lessor may direct at closing in immediately available funds. Lessee shall not have the right to exercise this option or consummate the exercise thereof if at the time of exercise or consummation it shall be in default of any of the terms and conditions of this Lease or if any condition shall exist which upon the giving of notice or the passage of time, or both, would constitute a default by Lessee under this Lease.

The failure of Lessee to consummate the purchase of the Premises as contemplated herein shall not release Lessee from its obligations under this Lease and the Lease shall remain in full force and effect until the expiration of the Lease Term or applicable extension period. The escrow shall close within the Purchase Period, or Lessor, at its option, may terminate Lessee's option to purchase the Premises during such time period. The closing date may be extended for a reasonable period of time to permit Lessor to cure title defects or to permit either party to cure any other defects or defaults provided each party is diligently seeking to cure such defect or default and Lessee continues to perform its obligation hereunder. ... [Emphasis added.]

A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. Civ. Code art. 2668. A lease contract forms the law between the parties, defining their respective legal rights and obligations. **Hornbeck Offshore Operators, LLC v. Cross Group, Inc.,** 2016-0174 (La. App. 1 Cir. 10/31/16), 207 So.3d 1141, 1147, writ denied, 2016-2095 (La. 1/9/17), 214 So.3d 872. In all matters not provided for in the Title covering leases, the contract of lease is governed by the rules of the Titles of "Obligations in General" and "Conventional Obligations or Contracts." La. Civ. Code art. 2669.

The determination of whether a contract is clear or ambiguous is a question of law. **John M. Floyd & Associates, Inc. v. Ascension Credit Union,** 2021-0560 (La. App. 1 Cir. 12/22/21), 340 So.3d 259, 267. Interpretation of a contract

is the determination of the common intent of the parties. La. Civ. Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate. **McCary v. Oceaneering International, Inc.**, 2017-1163 (La. App. 1 Cir. 2/27/18), 243 So.3d 613, 616. However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact inappropriate for summary judgment unless there is "no genuine issue as to material fact." **Carter v. BRMAP**, 591 So.2d 1184, 1188 (La. App. 1 Cir. 1991); La. Code Civ. P. art. 966(A)(3).

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. Louisiana Civil Code article 2053 provides that "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Where a doubtful provision cannot be otherwise resolved, that provision must be interpreted against the party who furnished its text. See La. Civ. Code art. 2056.

In granting partial summary judgment in favor of SRG in this matter, the trial court noted as follows:

> The court is going to require that the defendant exercise the option and take the necessary actions and steps that [are] needed for the specific performance of the particular option. I see this as a clear situation. It is not as mumble-jumbled as lessor [is] projecting. I think it was quite disingenuous for the lessor to try and evict the lessee when he attempted to exercise the option. The particular clause [Louisiana] Civil Code article 2046 specifically states that, "when the

11

words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

The lessee timely exercised their options within the prescribed period of time under the lease and lessor should be required to honor that.

As the mover on the motion for summary judgment, SRG bore the initial burden of proof on the motion and would also bear the ultimate burden of proof of establishing entitlement to the declaratory relief requested in its petition. See La. Code Civ. P. art. 966(D)(1). At the crux of this dispute is whether the terms of the lease between Patten/Jenkins and SRG are clear and explicit such that the option to purchase should be enforced as ordered by the trial court in the judgment below. Thus, as a threshold question, this court must determine whether the lease is clear or ambiguous.

SRG argues that Section 23 allows the lessee to exercise the option to purchase during the 90 days immediately preceding the twentieth anniversary of the lease or March 8, 2019, which SRG notes it timely did with notice to Patten/Jenkins on December 13, 2018. SRG further asserts that Section 23 of the lease should be interpreted to contemplate that the closing can occur after the expiration of the lease term as Section 23 provides that the closing "must occur during the first 90 days … following the end of the applicable Window." In this case, SRG argues that because it exercised the option to purchase within 90 days immediately preceding the twentieth anniversary of the lease, the closing could occur within 90 days after the expiration of the lease term.

Patten/Jenkins alleges that this argument completely ignores the unambiguous language of Section 23 that states the closing "in no event shall occur after the date of the expiration of the Lease Term or the expiration of any extension thereof." Patten/Jenkins argues that had SRG extended the lease term pursuant to

12

Section 28, the option to purchase could have been exercised and escrow closed within the time frame required by Section 23.

Although we agree with the trial court that SRG timely exercised the option to purchase, this does not end our inquiry as the lease clearly provides for other conditions that must be satisfied before the option can be enforced. After a thorough review of the lease in question, application of the general rules of construction regarding the interpretation of contracts, and based on the unique facts of this case, we conclude that Section 23 is unclear and susceptible to differing interpretations as it concerns the time for close of escrow, upon which, without further determination of intent, reasonable persons may disagree. For these reasons, we find there are material issues of fact in dispute as to whether the parties intended that the closing of escrow must occur before the expiration of the lease term and therefore, summary judgment was not appropriate.[8]

**DECREE**

For the above and foregoing reasons, we reverse the trial court's October 23, 2022 judgment, granting partial summary judgment in favor of SRG Baton Rouge II, L.L.C.[9] Moreover, we vacate the November 30, 2019 judgment, granting SRG Baton Rouge II, L.L.C.'s Motion for Protective Order and to Quash Subpoena Duces Tecum; the November 5, 2021 judgment, denying Patten/Jenkins BR Popeye's, L.L.C.'s Exception of No Right of Action and Motion to Vacate Judgment on Motion for Partial Summary Judgment; the July 13, 2022 judgment granting SRG Baton Rouge II, L.L.C.'s Motion in Limine; and the December 12, 2022 judgment on the merits. We dismiss SRG's answer to the appeal as moot.

---

[8] We further find there exist genuine issues of material fact as to whether any delay by Patten/Jenkins prevented closing in accordance with the contract, such that the option could be enforced.

[9] Because we find the trial court erred in granting summary judgment in this case, all issues raised by Patten/Jenkins concerning the merits judgment, as well as the other interlocutory judgments entered by the trial court prior to the trial on the merits, are rendered moot and require no further discussion.

13

We remand the matter for further proceedings consistent with this opinion. We assess all costs associated with this appeal against appellees, SRG Baton Rouge II, L.L.C.

**OCTOBER 23, 2022 JUDGMENT, GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF SRG BATON ROUGE II, L.L.C. REVERSED; NOVEMBER 30, 2019 JUDGMENT, GRANTING SRG BATON ROUGE II, L.L.C.'S MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA DUCES TECUM VACATED; NOVEMBER 5, 2021 JUDGMENT, DENYING PATTEN/JENKINS BR POPEYE'S, L.L.C.'S EXCEPTION OF NO RIGHT OF ACTION AND MOTION TO VACATE JUDGMENT ON MOTION FOR PARTIAL SUMMARY JUDGMENT VACATED; JULY 13, 2022 JUDGMENT, GRANTING SRG BATON ROUGE II, L.L.C.'S MOTION IN *LIMINE* VACATED; DECEMBER 12, 2022 JUDGMENT ON THE MERITS VACATED; ANSWER TO APPEAL DISMISSED AS MOOT; REMANDED.**