# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0982

## PONTCHARTRAIN PARTNERS, LLC

## VERSUS

## TERREBONNE LEVEE AND CONSERVATION DISTRICT

Judgment Rendered: _____ FEB 2 8 2025 _____

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 192462

The Honorable Timothy C. Ellender, Jr., Judge Presiding

| | |
|---|---|
| Jason R. Anders<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant,<br>Pontchartrain Partners, LLC |
| Jacob D. Dagate<br>Assistant District Attorney<br>Houma, Louisiana | Counsel for Defendant/Appellee,<br>Terrebonne Levee and Conservation<br>District |
| M. David Kurtz<br>Brian M. Ballay<br>New Orleans, Louisiana | Counsel for Defendant/Appellee,<br>Aptim Coastal, Inc. |

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

**MILLER, J.**

This matter is before us on appeal by the plaintiff, Pontchartrain Partners, LLC, from an amended judgment of the trial court granting a motion for partial summary judgment in favor of Terrebonne Levee and Conservation District and Aptim Coastal, Inc. For the reasons that follow, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

On December 8, 2017, Pontchartrain Partners, LLC ("Pontchartrain") entered a public bid contract with the Terrebonne Levee and Conservation District ("TLCD") to perform levee construction work for the Morganza to the Gulf – Hurricane Protection Interim Flood Risk Reduction Project, Falgout Canal South Levee Tie-In and Borrow / Storage Area. The parties involved in the contract are TLCD, the "owner;" APTIM Coastal, Inc. ("APTIM"), the "engineer;" and Pontchartrain, the "contractor."

The purpose of the project was to construct a section of levee connecting the Falgout Canal "Jimmy Dagate" Floodgate to the Lower Dularge West (Brady Road) Levee within the construction limits established in the field and as shown on the plans. The "Description" of the project in the "Invitation to Bidders" provided that the:

Project consists of:

- Excavation of existing borrow canal to elevation -16.0' NAVD from Station 500+00 thru approximately 611+00 for required fill material (option to barge-in).
- Haul, place fill material, and construct levee embankment between Stations 0+81 to 27+00 of Falgout Canal South Levee Tie-In to elevation +13' NAVD.
- Seeding and Fertilizing constructed levee.
- Alternate 1 – Excavation and stock piling of existing borrow canal to elevation -16.0' NAVD from approximately Station 611+00 thru 722+00.
- Alternate 2 – Placement of stock piled material on 6.2 miles of existing levee to elevation +10.0' NAVD.

2

The project, as originally designed, was unable to be completed utilizing the quantities of material specified in the contract. This required a change of design, resulting in delays, which eventually culminated in the execution of certain change orders.

On December 1, 2021, Pontchartrain filed a petition for breach of contract against TLCD. Pontchartrain alleged therein that it incurred significant costs and delays not within its control, citing the following issues that occurred over the course of the project:

> TLCD changed the lift layer requirements, including but not limited to, the linear feet and quantities of required material; TLCD's [faulty] design resulted in numerous defects and changes; TLCD's re-engineering of the project scope; shortage in government-supplied materials; various contract delays by owner and/or engineer; incorrect pay rate for work directed to be performed under ALT 1; and, unreasonable delays and withholding of contractor payments.

Pontchartrain further contended that during the life of the contract, it dredged 181,471 cubic yards that were billable under ALT 1–0014, but was directed to bill for only 168,899 cubic yards ALT 1–0014, and to bill for the remainder of the 12,572 cubic yards under CLIN 0005, causing its earnings to be reduced by $6,914.60. Pontchartrain sought a judgment for all sums due under the contract, delay fees, interest for lack of timely payment, and attorney's fees pursuant to La. R.S. 38:2191, which governs payments by public entities on public contracts.

TLCD filed an answer wherein it asserted affirmative defenses contending that pursuant to Section 10.8 of the contract, Pontchartrain waived all claims for increase in price and delays due to the project's redesign after negotiating and executing Change Order 6. TLCD then filed a reconventional demand against Pontchartrain likewise seeking damages for Pontchartrain's alleged breaches of contract, non-performance of contractual obligations, delayed performance of contractual obligations, and defective performance of contractual obligations.

3

Further, TLCD filed a third-party demand against APTIM seeking indemnity in the event that TLCD was held liable to Pontchartrain on the main demand.

On July 28, 2023, after APTIM answered TLCD's third-party demand and Pontchartrain answered TLCD's reconventional demand, TLCD and APTIM (collectively referred to as "defendants") filed a motion for partial summary judgment requesting that the court declare that Pontchartrain's claim for an increase in contract price due to costs or delays allegedly incurred due to a redesign of the levee and/or changes in design were waived when it executed Change Orders 6 and 7, thereby constituting a full and mutual accord and satisfaction, and/or were waived due to the failure to provide timely notice in accordance with the terms of the contract for plaintiff's claim for an increase in contract price due to costs or delays allegedly occurring due to a redesign of the levee and/or changes in design. In support, defendants attached the affidavit of the Executive Director of TLCD, Reggie Dupre, Jr.; the contract documents and specifications; a copy of Pontchartrain's petition for breach of contract; Change Orders 6 and 7; correspondence regarding Pay Request No. 22; and a check dated March 4, 2021, payable to Pontchartrain in the amount of $283,174.77 without objection.

Pontchartrain opposed the motion for partial summary judgment contending it was never fully compensated for the work performed and the delays it incurred dues to the original flawed design, that the new design was flawed, and that there was not enough material for Pontchartrain to meet the redesigned levee causing it to expend additional time and resources attempting to meet the new design, which it was never able to do. Pontchartrain refuted defendants' claim that it waived its right to claim damages by executing Change Orders 6 and 7 by issuing defendants numerous notices that it was entitled to be paid for all work performed prior to performing the new work outlined in Change Orders 6 and 7. Finally,

4

Pontchartrain contended that it was impossible for it to waive claims for delay damages when waiver of such claims is precluded by La. R.S. 38:2216(H).[1] In support of its opposition, Pontchartrain attached the affidavit of its Chief Construction Officer, Barlow J. Cook; Aptim's Field Order No. 1; email correspondence between the parties; minutes from a September 10, 2019 project status meeting; Change Orders 6 and 7; a GIS Engineering Survey of the project; and Change Order 5.

Defendants filed a reply memorandum in response, reiterating their arguments in support of the motion and objecting to Paragraphs 8 and 11 of Mr. Cook's affidavit pursuant to La. C.C.P. art. 966(D)(2).[2]

Paragraphs 8 and 11 provide as follows:

8. TLCD eventually issued Change Orders #6 and #7, the purpose of which was to perform new work on the project. Specifically, the purpose of the change orders was for [Pontchartrain] to reclaim previously placed materials (for which [Pontchartrain] had not been

---

[1]Louisiana Revised Statute 38:2216(H) provides that:

Any provision contained in a public contract which purports to waive, release, or extinguish the rights of a contractor to recover cost of damages, or obtain equitable adjustment, for delays in performing such contract, if such delay is caused in whole, or in part, by acts or omissions within the control of the contracting public entity or persons acting on behalf thereof, is against public policy and is void or unenforceable. When a contract contains a provision which is void and unenforceable under this Subsection, that provision shall be severed from the other provisions of the contract and the fact that the provision is void and unenforceable shall not affect the other provisions of the contract.

[2]Louisiana Code of Civil Procedure article 966 was amended by 2023 La. Acts. No. 317, § 1, effective August 1, 2023. Thus, at the time of the hearing on September 26, 2023, La. C.C.P. art. 966(D)(2), as amended, provided as follows:

The court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised.

To the extent that defendants attached exhibits to their reply memorandum, albeit purportedly under the pretext that the exhibits were permissible as having been previously attached to their motion for partial summary judgment and Pontchartrain's opposition thereto, we note that no additional documents may be filed with the reply memorandum and the trial court may only consider those documents filed in support of or in opposition to the motion for summary judgment. See La. C.C.P. art. 966(B)(3) and La. C.C.P. art. 966(D)(2).

compensated) and to place that material into new sections. At no point did these change orders indicate that they related to delays or issues [Pontchartrain] encountered with the original faulty design.

11. It was never [Pontchartrain's] intent or understanding that it would be waving any rights it had relating to the delays and damages associated with the original faulty design by executing Change Orders #6 or #7. It was never [Pontchartrain's] intent or understanding that it would be waiving any rights it had relating to the damages it incurred due to the additional efforts and resources it expended to perform work that was not covered due to the faulty design included in Change Orders #6 or #7.

Defendants contend that the statements in Paragraphs 8 and 11, which express the purpose of Change Orders 6 and 7 and Pontchartrain's intent or understanding in executing the change orders, seek to change the plain text of the change orders as well as the contract, thus violating the parole evidence rule. Defendants thus objected to the relevancy of Pontchartrain's "intent and understanding" arguing that pursuant to La. C.C. art. 2046, contracts are to be enforced as written.

The motion for partial summary judgment was heard on September 26, 2023. Before rendering judgment on the merits, the trial court considered defendants' objections to Mr. Cook's affidavit and struck Paragraph 11. In its stated reasons for striking Paragraph 11, the trial court "[found] it to be self-serving, expressing the intent of a company, and [did not] find it to be of any value." Thereafter, the trial court granted the motion for partial summary judgment and provided oral reasons for its decision. The trial court determined that pursuant to Paragraph 10.8 of the contract, Change Orders 6 and 7 constituted full and mutual accord and satisfaction "of previous work completed by the parties." The trial court further determined that Pontchartrain was barred from asserting any claims pursuant to La. R.S. 38:2216(H) because a compromise had been reached on these issues through their execution of the change orders.[3]

---

[3]At the hearing on the motion for partial summary judgment, defendants attempted to "offer, file, and introduce" the exhibits attached to their memorandum in support and their reply

A judgment was ultimately signed on March 1, 2024, striking Paragraph 11 of Mr. Cook's affidavit, granting defendants' motion for partial summary judgment and dismissing Pontchartrain's "claim for an increase in contract price due to costs or delays allegedly occurring due to a redesign of the levee and/or changes in design," and certifying the partial summary judgment as a final judgment subject to an immediate appeal pursuant to La. C.C.P. art. 1915(B)(1).[4]

Pontchartrain now appeals contending that the trial court erred in granting defendants' motion for partial summary judgment.

## DISCUSSION

### Appellate Jurisdiction

At the outset, we note that an appellate court has the duty to examine its subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. Advanced Leveling & Concrete Solutions v. Lathan Co., Inc., 2017-1250 (La. App. 1st Cir. 12/20/18), 268 So. 3d 1044, 1046 (*en banc*). A partial summary judgment rendered pursuant to La. C.C.P. art. 966(E) may be immediately appealed during ongoing litigation only if it has been properly certified as final by the district court. See La. C.C.P. art. 1915(A)(3) & (B); Belleview Estates, LLC v. Knoll & Dufour Lands, LLC, 2019-1394 (La. App. 1st Cir. 9/21/20), 315 So. 3d 252, 258. Although the trial court designated the March 1, 2024 partial summary

---

memorandum. Likewise, Pontchartrain attempted to "offer" the exhibits attached to its opposition to the motion. While we previously noted that no additional documents may be filed with a reply memorandum, we further note that parties are not permitted to introduce summary judgment evidence at the hearing. See Tillman v. Nationwide Mutual Insurance Company, 2020-0250 (La. App. 1st Cir. 2/22/21), 321 So. 3d 1017, 1022, n.5, writ denied, 2021-00429 (La. 5/25/21), 316 So. 3d 446, citing Huggins v. Amtrust Insurance Company of Kansas, Inc., 2020-0516 (La App. 1st Cir. 12/30/20), 319 So. 3d. 362, 366, n.1. Only documents filed or referenced in support of or in opposition to the motion for summary judgment may be considered by the trial court on a motion for summary judgment. See La. C.C.P. arts. 966(A)(4) and (D)(2); Ricketson v. McKenzie, 2023-0314 (La. App. 1st Cir. 10/4/23), 380 So. 3d 1, 5. Thus, on review we will only consider the exhibits attached in support of or in opposition to the motion.

[4]At the conclusion of the hearing, the trial court noted "[t]his is a final judgment on this partial motion for summary judgment" and admonished counsel to "make sure that that language is included on the judgment." However, a judgment was initially signed on November 27, 2023, which did not contain a designation of finality pursuant to La. C.C.P. art. 1915(B). At the request of the parties, the trial court signed an amended judgment on March 1, 2024, certifying the partial summary judgment as a final judgment subject to an immediate appeal.

7

judgment as final pursuant to La. C.C.P. art. 1915(B)(1), that designation is not determinative of this court's jurisdiction. Rather, this court's jurisdiction hinges on whether the certification was appropriate. Cutrer v. Alexis, 2021-0577 (La. App. 1st Cir. 12/22/21), 2021 WL 6064217, *3 (unpublished). Because the trial court herein did not give reasons for the certification, this court must make a *de novo* determination of whether the certification was proper. R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La. 3/2/05), 894 So. 2d 1113, 1123.

The factors to be considered in determining whether a partial judgment should be certified as appealable include: (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. However, the overriding inquiry is whether there is no just reason for delay. R.J. Messinger, Inc., 894 So. 2d at 1122-1123.

Applying the Messinger factors to the instant case, we find there is no just reason to delay this court's review of the March 1, 2024 amended judgment. Through their motion for partial summary judgment, defendants sought a determination of whether Paragraph 10.8 of the contract serves to bar Pontchartrain's claims for delay damages for all work prior to the execution of Change Orders 6 and 7 or whether Paragraph 10.8 bars delay damages for new work included in Change Orders 6 and 7, which is a matter of contractual interpretation. Once this issue is decided, the parties can continue to litigate any

8

remaining breach of contract issues in the main, reconventional, and third-party demands.[5]

Moreover, future developments in the proceedings on the merits of the remaining issues in the main, reconventional, and third-party demands would not moot this Court's decision on whether Paragraph 10.8 of the contract serves to bar Pontchartrain's claims, nor would this Court be obliged to consider that same issue a second time. A decision on this issue would prevent delays, shorten the time of trial, and could considerably lower costs in the trial court. Applying these precepts, we find no abuse of the trial court's discretion in certifying the partial summary judgment as a final judgment under La. C.C.P. art. 1915(B).

## Summary Judgment

The summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). The trial court's decision on a motion for summary judgment is reviewed *de novo* using the same criteria applied by the trial court to determine whether summary judgment is appropriate. Short v. RaceTrac Petroleum, Inc., 2022-0859 (La. App. 1st Cir. 2/24/23), 361 So. 3d 1051, 1058, writ denied, 2023-00535 (La. 6/7/23), 361 So. 3d 973.

The initial burden of proof is on the mover. However, if the mover will not bear the burden of proof at trial, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce

---

[5]In its main demand, Pontchartrain additionally sought an award for understated earnings "[d]uring the life of the Contract" caused by certain billing directives. Pontchartrain does not aver that this claim arises from or is caused by the redesign or change orders. Thus, the March 1, 2024 amended judgment's dismissal of the claims for an increase in the contract price due to costs or delays caused by a redesign does not dismiss the entirety of the claims set forth in Pontchartrain's main demand.

factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition that proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates that the motion for summary judgment be granted. See Jenkins v. Hernandez, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So. 3d 315.

Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Chevis v. Rivera, 2021-0124 (La. App. 1st Cir. 9/24/21), 329 So. 3d 831, 838, writ denied, 2021-01546 (La. 12/21/21), 330 So. 3d 317. However, the court may grant summary judgment based on an intent issue when no genuine issue of material fact concerning the pertinent intent exists. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 24, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. In deciding whether to grant or deny a motion for summary judgment, a trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence. SRG Baton Rouge II, L.L.C. v. Patten/Jenkins BR Popeye's, L.L.C., 2023-1204 (La. App. 1st Cir. 5/31/24), 391 So. 3d 73, 78. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Short, 361 So. 3d at 1059.

### Contractual Interpretation

The contract documents for the project herein include the Agreement between the owner and the contractor, Addenda, Contractor's Bid, including documentation accompanying the Bid and any post-Bid documentation submitted, the bonds, the General Conditions, the Technical Provisions, the Drawings,

together with all Modifications issued after the execution of the Agreement, and all documents contained in the booklet entitled "Contract Documents."

Section 10.8 of the contract provides as follows:

CONTRACTOR'S ACCEPTANCE OF A CHANGE ORDER OR WRITTEN AMENDMENT: The increase or decrease in Contract Price or Contract Time, or both stated in a Written Amendment or a Change Order signed by CONTRACTOR shall unequivocally comprise the total price and/or time adjustment due or owed for the Work or changes defined in the Written Amendment or Change Order. By executing a written Written Amendment or Change Order, CONTRACTOR acknowledges and agrees that the stipulated increases or decreases in Contract Price and/or time represent full compensation for all increases and decreases in the cost of or the time required to perform the entire Work under the contract arising directly or indirectly from the change, including the costs and delays associated with the interruption of schedules, extended overheads, delay, loss of momentum, acceleration to overcome delays and loss of momentum, and cumulative impacts or ripple effect on all other non-affected Work under this contract. Such signing of a Written Amendment or Change Order constitutes full and mutual accord and satisfaction for the adjustment in Contract Price or time as a result of increases or decreases in costs and time of performance caused directly and indirectly from the change, subject to the current scope of the Work as set forth in the Contract Documents. Acceptance of this waiver constitutes an agreement between OWNER and CONTRACTOR that the Written Amendment or Change Order represents an equitable adjustment to the Contract, and that CONTRACTOR will waive all rights to file a claim on the Change Order after it is properly executed by OWNER and CONTRACTOR[.]

"Work" is defined in the contract as:

Any and all obligations, duties, responsibilities, labor, materials, equipment, temporary facilities, and incidentals, and the furnishing thereof necessary to complete the construction assigned to, or undertaken by CONTRACTOR, pursuant to the Contract Documents. Also, the completed construction or parts thereof required to be provided under the Contract Documents, including all materials, equipment, and supplies incorporated or to be incorporated in the construction.

Change Order 6 provides:

**You are directed to make the following changes in the Contract Documents.**

**Description:**
Deduct 17,504.65 linear feet from contract line item 06 decreasing this line item by $766,178.53. Add a new lump sum line item in the

11

amount of $703,445.11 resulting a net change of $-62,733.42 to the contract price.

**Purpose of Change Order:**
To add a new contract line item for work performed building a revised levee section by mean[s] of reclaiming previously placed material and utilizing material placed in the emergency temporary berm, includes all labor, equipment, testing, and materials required to complete the levee construction to EL +9 in accordance with the revised design sections and all existing contract specifications.

Change Order 7 provides:

**You are directed to make the following changes in the Contract Documents.**

**Description:**
Add 15,153 cubic yards to contract line item 05 increasing this line item by $62,733.42.

**Purpose of Change Order:**
To remove and stockpile a Temporary Levee that the contractor built and repaired, before and after Hurricane Barry.

The determination of whether a contract is clear or ambiguous is a question of law. John M. Floyd & Associates, Inc. v. Ascension Credit Union, 2021-0560 (La. App. 1st Cir. 12/22/21), 340 So. 3d 259, 267. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate. McCary v. Oceaneering International, Inc., 2017-1163 (La. App. 1st Cir. 2/27/18), 243 So. 3d 613, 616. However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic evidence may be used to determine the true intent of the parties, and determining

12

the intent of the parties becomes, in part, a question of fact inappropriate for summary judgment unless there is no genuine issue as to material fact. La. C.C.P. art. 966(A)(3); SRG Baton Rouge II, L.L.C., 391 So. 3d at 80.

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. Where a doubtful provision cannot be otherwise resolved, that provision must be interpreted against the party who furnished its text. See La. C.C. art. 2056.

In granting partial summary judgment, the trial court determined that the language of Paragraph 10.8 was "unequivocal" and served to compromise all "previous work completed" by Pontchartrain, and that execution of the change orders was tantamount to entering a settlement agreement "on these issues by the change orders[,]" reasoning as follows:

> It's clear to me that while the language in Change Order 6 has the word "new," that there were plenty of ways for [Pontchartrain] to address any grievances pursuant to the contract terms for any problems that they had or effects of any change orders that were wanting to compromise their position.
>
> ... These parties contracted and negotiated. They're sophisticated parties. These are people that are not new to negotiated contracts. ... When the language has unequivocal sentiments, I can only conclude that the parties intend to be bound by those terms. As such, the Court finds that paragraph 10.8 is relevant in this matter and that the Change Orders 6 and 7 constitute full and mutual accord and satisfaction of previous work completed by the parties.
>
> * * *
>
> The Court on the issue of the Title 38:2216(H) provision is going to rely upon the Omega case in support that a compromise had been reached on these issues by the change orders and such, that

13

[Pontchartrain] would be barred from asserting any claims that would give them that space under Title 38.[6]

In its petition, Pontchartrain sought damages for delay "[t]hroughout the project," not merely since the redesign or change in design. As movers on the motion for summary judgment, defendants bore the initial burden of proving that pursuant to Section 10.8 of the contract, Pontchartrain's claims for delay damages prior to the execution of the change orders were waived by the execution of the change orders, thereby constituting a full and mutual accord and satisfaction, and/or were waived due to the failure to provide timely notice in accordance with the terms of the contract. See La. C.C.P. art. 966(D)(1). Thus, as a threshold question, we must first determine whether the terms of the contract are clear and explicit such that Section 10.8 of the contract precludes Pontchartrain from pursuing costs for delays incurred prior to the execution of Change Orders 6 and 7. See SRG Baton Rouge II, L.L.C., 391 So. 3d at 81.

A plain reading of Paragraph 10.8 provides that the contractor agrees that execution of a change order "constitutes full and mutual accord and satisfaction for the adjustment in Contract Price" for costs and delays for "the entire work ... arising directly or indirectly from the change" as well as "costs and time of performance caused directly and indirectly from the change[.]" Paragraph 10.8 can be interpreted to waive claims for costs for work *arising* directly or indirectly from the change order and *caused* directly or indirectly from the change order, which can be interpreted as contemplating work following the execution of the change orders. However, the purpose of the change orders was "[t]o add a new contract

---

[6] In Omega General Construction, L.L.C. v. Recreation & Parks Commission for Parish of East Baton Rouge, 2021-0334 (La. App. 1st Cir. 12/22/21), 341 So. 3d 53, 63, writ denied, 2022-00426 (La. 5/3/22), 337 So. 3d 162, this Court held that although La. R.S. 38:2191(C) indicates that the provisions of the statute are not subject to waiver, it does not prohibit parties from entering into a compromise to resolve their differences. Thus, when the general contractor on a public works project, Omega, signed a Settlement Agreement with the public body, BREC, it compromised any claims it had against BREC in regards to the project. This Court thus held that although a waiver is not permissible under La. R.S. 38:2191, a compromise is, and found that the settlement agreement was valid and enforceable under La. R.S. 38:2191.

14

line item for work performed building a revised levee section" and "[t]o remove and stockpile a Temporary Levee that the contractor built and repaired, before and after Hurricane Barry." Thus, to some degree, the change orders may refer to work previously "performed."

On review of the contract documents as a whole, it is not clear whether referenced costs arising from or caused by the change orders contemplate costs incurred prior to the execution of the change orders. After a thorough review of the contract herein and application of the general rules of construction regarding the interpretation of contracts, we conclude that the contract documents are ambiguous and are susceptible to differing interpretations. Because we find that the contract is ambiguous as a matter of law, extrinsic evidence may be used to determine the true intent of the parties, and determinations of the intent of the parties becomes a question of fact generally inappropriate for summary judgment. See La. C.C.P. art. 966(A)(3); SRG Baton Rouge II, L.L.C., 391 So. 3d at 81.

Accordingly, we find the trial court erred in granting defendants' motion for partial summary judgment. Moreover, to the extent that interpretation of this ambiguous contract requires evidence to determine the true intent of the parties, we find the trial court erred in striking Paragraph 11 of Mr. Cook's affidavit, which expresses Pontchartrain's "intent or understanding" in executing Change Orders 6 and 7.

## CONCLUSION

For the above and foregoing reasons, the March 1, 2024 amended judgment of the trial court granting defendants' motion for partial summary judgment is reversed. This matter is remanded to the trial court for further proceedings. All costs of this appeal are assessed to the defendants/appellees, the Terrebonne Levee and Conservation District and Aptim Coastal, Inc.

**REVERSED AND REMANDED.**

15